# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE | : CIVIL ACTION : : |
| vs. | : NO. 10-CV-2678 : |
| ANASTASSIA TODOR, M.D. | : |

## MEMORANDUM AND ORDER

**JOYNER, J.**                                              **January 31, 2011**

This is yet another civil action commenced by the American Board of Internal Medicine ("ABIM") against an individual physician seeking injunctive relief and money damages for the improper disclosure and dissemination of ABIM's copyright and/or trade secret-protected board certification examination questions.[1]  By the motion which is now before us, Defendant Anastassia Todor, M.D. moves for the dismissal of this action on the grounds that this court lacks the requisite *in personam* jurisdiction to proceed further.

## Factual Background

The plaintiff avers in its Second Amended Complaint that some two weeks before taking the August 2008 Internal Medicine

---

[1] The other actions are: <u>American Board of Internal Medicine v. Salehi</u>, No. 10-CV-2677, <u>American Board of Internal Medicine v. Mukherjee</u>, No. 10-CV-2676, <u>American Board of Internal Medicine v. Oni</u>, No. 10-CV-2679 and <u>American Board of Internal Medicine v. Von Muller</u>, No. 10-CV-2680.

Certifying Examination, Defendant Anastassia Todor, M.D. "knowingly gathered and collected hundreds of actual ABIM examination questions from Examinees who had already taken the August 2008 Examination.[2] Defendant allegedly then forwarded these exam questions to the Arora Board Review ("ABR"), a test-preparation course and in return received from ABR still additional ABIM examination materials. (Second Amended Complaint, ¶1). According to ABIM, it repeatedly notifies candidates for Board Certification that it is the owner of the Examination and that the Exam is a copyrighted work that may not be reproduced. Such notification is given by, *inter alia*, the candidate's required acceptance of ABIM's "Policies and Practices for Certification" at the time they register for an examination, and by the electronic signing of ABIM's "Pledge of Honesty" which appears on applicants' computer screens immediately prior to the start of, and which is a pre-condition to, the taking of each examination. (Second Amended Complaint, ¶s18-20; Langdon Declaration, ¶9). An additional warning that ABIM will impose severe penalties on any candidates who violate the Pledge of Honesty is again given at the end of each examination. (Second

---

[2] The Internal Medicine Examination is given over a series of weeks in the month of August (known as the "Exam Window") to accommodate the more than 8,000 physicians who seek to take the Examination. (Declaration of Lynn O. Langdon, ¶5). Physicians who register for the Internal Medicine Examination are aware of the exam window because the individual physicians themselves choose the specific date of their Examination administration from a calendar of available dates. (Langdon Declartion, ¶6).

Amended Complaint, ¶21). Thus, Plaintiff submits, Defendant Todor's conduct constitutes willful copyright infringement in violation of the Copyright Act, 17 U.S.C. §101, *et. seq*. and willful and malicious misappropriation of trade secrets under 12 Pa.C.S.A. §5302-5304.

As noted, Defendant Todor moves for the dismissal of this action in its entirety on the grounds that this Court lacks the necessary personal jurisdiction over her to proceed further. Specifically, Dr. Todor avers the following pertinent facts: (1) she is currently a resident of the state of Colorado, (2) that at the time she registered for and took the examination she was residing in Michigan, (3) that she registered for the examination online using her computer in Michigan, (4) that she took the exam at an independent testing center located in Troy, Michigan, and (5) that she has never been to and has no other contacts whatsoever with the Commonwealth of Pennsylvania.

In response, the plaintiff asserts that because its "investigation has confirmed that the content of Dr. Todor's email originated from a physician located in Pennsylvania, who sat for his ABIM examination in Pennsylvania and who copied, disclosed and disseminated questions from his Internal Medicine Examination while in Pennsylvania," it has established a *prima facie* case of personal jurisdiction entitling it to "have its allegations taken as true and all factual disputes drawn in its

3

favor," and to conduct jurisdictional discovery. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, pp. 5, 7).

## **Standards Applicable to Rule 12(b)(2) Motions**

It is undisputed that jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 119 S. Ct. 1563, 1567, 143 L. Ed. 2d 760 (1999). To be sure, "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998), quoting Ex parte McCardle, 7 Wall. 506, 514, 19 L. Ed. 264 (1868). For these reasons, the validity of an order of a federal court depends upon the court's having jurisdiction over both the subject matter and the parties. Insurance Corporation of Ireland v. Compagnie Des Bauxites, 456 U.S. 694, 701, 102 S. Ct. 2099, 2103, 72 L. Ed. 2d 492 (1982), citing, *inter alia*, Stoll v. Gottlieb, 305 U.S. 165, 171-172, 59 S. Ct. 134, 137-138, 83 L. Ed. 104 (1938).

A defendant has the burden of raising the defense of lack of

personal jurisdiction; failure to do so renders it waived. TES Franchising, LLC v. Dombach, 2010 U.S. Dist. LEXIS 130314, at *3 (E.D. Pa. Dec. 9, 2010); Poole v. Sasson, 122 F. Supp. 2d 556, 557 (E.D. Pa. 2000); Fed. R. Civ. P. 12(h)(1). Under Fed. R. Civ. P. 12(b)(2), the defense of insufficient personal jurisdiction may be raised by filing a motion to dismiss. Once such motion is filed, the plaintiff bears the burden of establishing the court's jurisdiction over the moving defendant(s) by affidavits or other competent evidence. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). However, given that the plaintiff has a burden of proof to sustain, mere affidavits which parrot and do no more than restate plaintiff's allegations without identification of particular defendants and without factual content do not end the inquiry. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 (3d Cir. 1984). If the court does not hold an evidentiary hearing on the motion, the plaintiff need only establish a prima facie case of personal jurisdiction. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Finally, "it is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true and is to construe disputed

facts in favor of the plaintiff." Metcalfe, supra, quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

## Discussion and Analysis

Under Fed. R. Civ. P. 4(e), a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Eurofins Pharma U.S. Holdings v. Bioalliance Pharma, 623 F.3d 147, 155 (3d Cir. 2010). Whether a district court has personal jurisdiction over a nonresident defendant is a two-part inquiry. Id. First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the law of the forum state; second, the nonresident must have minimum contacts with the forum state sufficient to satisfy constitutional due process. Id., citing Metcalfe, 566 F.3d at 330. Pennsylvania's long arm statute provides that its courts' jurisdiction, in addition to existing over a person who transacts any business, does any act, owns any property, etc.,

> "...shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."

42 Pa. C. S. A. §5322(b). Thus, Pennsylvania's long arm statute

has been interpreted as authorizing Pennsylvania courts to exercise personal jurisdiction over nonresident defendants to the constitutional limit of the due process clause of the fourteenth amendment. <u>Wolk v. Teledyne Industries, Inc.</u>, 475 F. Supp. 2d 491, 503 (E.D. Pa. 2007), citing <u>Mellon Bank (East) PSFS Nat'l Assn. v. Farino</u>, 960 F.2d 1217, 1221 (3d Cir. 1992).

There are two types of personal jurisdiction - general jurisdiction and specific jurisdiction. <u>D'Jamoos v. Pilatus Aircraft, Ltd.</u>, 566 F.3d 94, 102 (3d Cir. 2009). General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities. <u>Remick v. Manfredy</u>, 238 F.3d 248, 255 (3d Cir. 2001). In contrast, specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "should reasonably anticipate being haled into court" in that forum." <u>Id</u>., quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) and <u>Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.</u>, 75 F.3d 147, 151 n.3 (3d Cir. 1996). Such a determination is claim specific because a conclusion that the District Court has jurisdiction over one of the defendants as to a particular claim does not necessarily mean that it has personal jurisdiction over

that same defendant as to another claim.  Remick, supra.

Here, it appears from Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion to Dismiss that only the concept of specific jurisdiction is at issue; indeed, there is no evidence whatsoever that this defendant possesses such "continuous and systematic" contacts with this forum to support a finding of general jurisdiction.  Accordingly, we undertake the following prescribed three-part inquiry to determine whether there is specific jurisdiction only.  See, D'Jamoos, supra.; O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007).  First, the defendant must have "purposefully directed its activities" at the forum.  D'Jamoos, and O'Connor, both supra, and citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985).  Second, the litigation must "arise out of or relate to" at least one of those activities.  D'Jamoos, supra, citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984) and O'Connor, 496 F.3d at 317.  And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with 'fair play and substantial justice.'" O'Connor, 496 F.3d at 317, quoting Burger King, 471 U.S. at 476 and International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945).  Alternatively, we shall consider

the effects of the defendant's activities because, "even when the defendant's contacts with the forum alone are far too small to comport with the requirements of due process under [this] traditional analysis," a plaintiff may demonstrate personal jurisdiction if he or she can show:

> (1) the defendant committed an intentional tort;
>
> (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten v. Godwin, 499 F.3d 280, 297 (3d Cir. 2007), quoting IMO Industries v. Kiekert, AG, 155 F.3d 254, 259, 265-66 (3d Cir. 1998) and citing Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

In the complaint in this case, the plaintiff asserts that this court possesses subject matter jurisdiction on the basis of federal question and original jurisdiction to hear claims relating to patents, copyrights and trademarks. See, 28 U.S.C. §§1331, 1338. To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work. Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 203 (3d Cir. 2005). Copying is a "shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set

forth at 17 U.S.C. §106." Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002), quoting Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 291 (3d Cir. 1991).[3] Generally speaking, a defendant of a copyright claim "may be found" wherever the defendant is amenable to personal jurisdiction. Blackburn v. Walker Oriental Rug Galleries, 999 F. Supp. 636, 638 (E.D. Pa. 1998).

Similarly, "misappropriation" of a trade secret[4] under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. §5301, *et.*

---

[3] 17 U.S.C. §106 now provides for six "exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phono records;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phono records of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission."

[4] "Trade secret" is defined in 12 Pa.C.S.A. §5302 as being:

"Information, including a formula drawing pattern, compilation including a customer list, program, device, method, technique or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use,

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

10

*seq.* includes:

> (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) disclosure or use of a trade secret of another without express or implied consent of a person who:
>
>> (I) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>>
>>> (A) derived from or through a person who had utilized improper means to acquire it;
>>>
>>> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>>
>>> © derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

12 Pa. C.S.A. §5302.

The complaint asserts personal jurisdiction over Dr. Todor " ... because, on information and belief, she purposely availed herself of the privilege of doing business in the Commonwealth of Pennsylvania and conducted business transactions with ABIM in Pennsylvania, giving rise to the claims asserted herein," and " ... because she directed tortious conduct to the Commonwealth of Pennsylvania by willfully infringing ABIM's copyrighted Examination and willfully misappropriating trade secrets of ABIM,

11

thereby causing injury to ABIM in Pennsylvania." (Complaint, ¶s5-6). Defendant Todor refutes these averments in her affidavits, beginning with the statement that she was born in Moscow, USSR in March, 1970, that it was in Moscow where she grew up and attained both her undergraduate and medical degrees. In August 1993, following her medical school graduation, Dr. Todor immigrated to the State of Michigan in the United States where she resided until 2008 when she moved to Colorado. While a Michigan resident, Defendant worked as a Research Fellow and an Associate Staff Investigator at the Henry Ford Heart & Vascular Institute, until she passed Parts I and II of the United States Medical Licensing Examination in 2005, at which time she began her residency in internal medicine at St. Joseph Mercy Oakland Hospital in Pontiac, Michigan. Defendant subsequently passed Parts III and IV of the U.S. Medical Licensing Examination in 2007 and in January 2008, while living in Sterling Heights, Michigan during the final year of her residency, she registered online for the ABIM Certifying Examination in Internal Medicine using a computer in Michigan and paid for the registration using a debit card on a Michigan bank. In May 2008, Defendant Todor enrolled in and attended the five-day Arora Board Review course in Livingston, New Jersey. She subsequently sat for the ABIM examination at an independent test center located in Troy, Michigan and immediately after she passed the examination, she

relocated from Michigan to Colorado to take a job as an Internal Medicine Hospitalist with IPC - The Hospitalist Company, Inc. Defendant continues to reside in Colorado to this date.

Defendant's Affidavit further attests that she does not and has never owned property, had a bank account, taken classes, treated patients or performed medical services or conducted any other business of any kind in Pennsylvania, nor has she ever paid taxes or ever been to Pennsylvania. Defendant also states that she has never advertised on the web or otherwise nor has she ever initiated or received any phone calls from anyone at ABIM, has never engaged in any negotiations with ABIM with respect to any contract nor has she ever requested or completed any of ABIM's self-evaluation modules. (See Affidavit of Anastassia Todor, dated October 21, 2010, Dkt. No. 13, ¶s2 - 17).

In addition, as to her alleged wrongdoing, Dr. Todor declares that the emails which she exchanged with Dr. Arora were sent to and from her computer in Michigan to and from his computer in New Jersey. The materials which she forwarded to Dr. Arora were sent to her unsolicited, by a Dr. Omar Shamsi, also a Michigan resident who, like her, had not yet taken the ABIM exam but was likewise preparing to take the examination on August 27, 2008. Defendant Todor further states that she did not and does not now know a Dr. Weber or any of the other recipients listed on Dr. Weber's August 2007 email that Dr. Shamsi sent her except for

13

Dr. Arora, whom she met in May 2008 when she took his review course in New Jersey. Finally, Dr. Todor attests that she never solicited or asked anyone to send her material related to any ABIM examination with the exception of the review course materials that she obtained from Arora Board Review and she was never informed by ABIM nor did she have any reason to believe that the questions that were presented to her in her ABIM examination would be the same exact questions as those presented to other candidates in other examinations. (Declaration of Anastassia Todor, dated December 6, 2010, attached to Defendant's Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 16).

For its proof in support of a *prima facie* showing of personal jurisdiction, the plaintiff here again relies on the Declaration of its Senior Vice President and Chief Operating Officer, Lynn O. Langdon, who attests to the following jurisdictional contacts:

- ABIM is an independent, not-for-profit, 501(c)(3) - qualified corporation dedicated to the advancement of excellence in the field of internal medicine and the subspecialties of internal medicine. Established in 1936, ABIM is headquartered in Philadelphia, Pennsylvania.

- ABIM maintains an "item bank" of "live" questions from which it selects examination questions. This "item bank" is stored on both computers and hard copies in ABIM's Philadelphia offices.

- ABIM develops its Examination questions through a

- rigorous and costly process whereby a Test Committee comprised of physicians from across the United States who are leaders in their fields of medicine and medical education meet 2 - 3 times per year in Philadelphia to write and evaluate new Exam questions.

- The unauthorized disclosure of ABIM Examination items causes serious injury to ABIM. Candidates who are exposed to actual Examination items in advance may gain an unfair advantage over other candidates which undermines the integrity of the Board Certification process. Further ABIM must remove compromised questions from its live item bank in Philadelphia, PA and, because those questions can no longer be used, they must be replaced at substantial cost and effort by ABIM.

- Dr. Todor registered to sit for the August 2008 Internal Medicine Examination on January 16, 2008, paying the required fee, which was received and processed by ABIM's staff members at its offices in Philadelphia, Pennsylvania.

- Dr. Todor sent an e-mail on August 17, 2008 at 9:37 a.m. to Dr. Arora, forwarding two lists of ABIM Examination questions - the first list contains 17 items and the second list contains 64 items. ABIM's investigation uncovered the original source of the list of 17 items based on the unique closing sentence at the end of the list, which was copied verbatim from the original email. Based on ABIM records, the physician who created the original email disclosing the list of 17 items is a Pennsylvania physician, who sat for the Internal Medicine Examination in Pennsylvania, and who lives and works in Pennsylvania.

- Upon discovering ABIM's confidential Examination items had been disclosed to others throughout the United States, ABIM removed them from its current item bank in Philadelphia, Pennsylvania.

Accepting the plaintiff's allegations as true and construing any disputed facts in favor of the plaintiff, we simply cannot find that ABIM has established a *prima facie* case of personal

jurisdiction[5] or shown that the requisite minimum contacts between Dr. Todor and this forum exist so as to warrant the exercise of personal jurisdiction over her in this case. To be sure, although it appears that ABIM has filed its annual examinations with the Register of Copyrights and the United States Copyright Office pursuant to its procedures for copyrighting secure tests under 37 C.F.R. §202.20(b)(4) and that it has received Certificates of Registration for its annual

---

[5] In its opposition brief to the motion for dismissal, Plaintiff freely concedes that it does not know the identity of many of the individuals from whom Defendant allegedly solicited and obtained ABIM Examination questions or the circumstances through which Defendant purportedly solicited and/or distributed examination materials. Plaintiff therefore repeatedly seeks leave to take jurisdictional discovery asserting that many of the facts relevant to jurisdiction are in the defendant's possession.

Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." Toys "R" Us, 318 F.3d at 456, citing Pinker, 292 F.3d at 368 and Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n., 107 F.3d 1026, 1042 (3d Cir. 1992). Thus, if a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between the party and the forum state," the plaintiff's right to conduct jurisdictional discovery should be sustained. Id., quoting Mellon Bank v. Farino, 960 F.2d at 1223. Jurisdictional discovery, however, "generally relates to corporate defendants and the question of whether they are doing business in the state. Where the defendant is an individual, the presumption in favor of discovery is reduced." Gilliland v. Hurley, 2010 U.S. Dist. LEXIS 19407 at *6 (W.D. Pa. March 4, 2010), quoting M.S.L. at Andover, 107 F.3d at 1042.

The gravamen of Plaintiff's complaint against Defendant Todor are the emails which she sent in the two-week period *before* she sat for the August 27, 2008 ABIM examination. These emails, *inter alia,* forwarded an email that had been authored one year before, in August, 2007 by a Pennsylvania physician, Dr. Weber, who apparently had then just taken the ABIM exam in Pennsylvania. Inasmuch as there is nothing on this record which demonstrates that Dr. Todor knew or solicited examination materials from Dr. Weber or that evinces that at the time Dr. Todor registered for and took the August 27, 2008 examination, ABIM provided any warnings or notices that its exam materials were copyrighted or would be used in subsequent examinations, we cannot find that ABIM has made the *prima facie* showing necessary to warrant a grant of jurisdictional discovery.

16

secure Examinations since 1986, there is absolutely no indicia that Defendant reproduced or distributed the copyrighted/trade secret-protected test questions in or to anyone in Pennsylvania or that at the time she forwarded the materials to Dr. Arora in New Jersey she knew or necessarily had reason to know that the questions were confidential.  (Declaration of Anastassia Todor, ¶s 9, 12).  Rather, the record demonstrates that, at best, Dr. Todor came into possession of an email containing examination materials from a Pennsylvania doctor who had taken the test one year earlier and that she forwarded that doctor's 1-year-old email to Dr. Arora in New Jersey.  In our opinion, this does **not** demonstrate that this defendant "purposely directed" her activities at this forum.  Moreover, while the Second Amended Complaint avers that it notifies candidates for Board Certification that its examinations are copyrighted by referring to its Policies and Procedures for Certification when the candidates register to take the examination, the plaintiff has not supplied a copy of the registration materials or the Policies and Procedures.  Instead, Ms. Langdon's Declaration states only the following at paragraph 18:

> "Dr. Todor sat for ABIM's Certifying Examination in Internal Medicine on August 27, 2008.  At the beginning of the Examination, Dr. Todor electronically signed the Pledge of Honesty in which she promised not to disclose, copy or reproduce any portion of the material contained in the Internal Medicine Examination."

Thus, while the gist of the Plaintiff's complaint against this

17

defendant is Dr. Todor's "gathering and collecting" of the examination items from unknown doctors and forwarding them from her computer in Michigan to Dr. Arora in New Jersey, the record reflects that all of these actions occurred **before** Dr. Todor took the examination and electronically signed the Pledge of Honesty. (Exhibit B to Plaintiff's Second Amended Complaint).  Nowhere in either the plaintiff's complaint or in any of the affidavits submitted as evidence in this case is there any evidence that Dr. Todor forwarded any examination information to Dr. Arora or anyone else **after** she sat for the test on August 27, 2008. Accordingly, we cannot find the necessary connection between, or an intended "effect" of, the defendant's alleged willful copyright infringement or misappropriation of the plaintiff's trade secrets and this forum.  We therefore shall grant the defendant's motion to dismiss for insufficient personal jurisdiction over the defendant in this case.

    An order follows.